Elliot J. Siegel (Bar No. 286798)
elliot@kingsiegel.com
Julian Burns King (Bar No. 298617)
julian@kingsiegel.com
**KING & SIEGEL LLP**
724 South Spring Street, Suite 201
Los Angeles, California 90014
tel: (213) 465-4802
fax: (213) 465-4803

Navid Barahmand (Bar No. 340934)
navid@barahmandlaw.com
**BARAHMAND LAW GROUP**
23801 Calabasas Road, Suite 2034
Calabasas, California 91302
tel: (818) 574-3355
fax: (818) 574-3757
Attorneys for Plaintiff and Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Isaac Davidson-Gesser**, individually and on behalf of all similarly situated individuals, **Ciara Richards**, individually and on behalf of all similarly situated individuals;

Plaintiffs,

vs.

**Aequor Technologies, LLC,** a New Jersey Limited Liability Company; **Aequor Healthcare Services, LLC,** a New Jersey Limited Liability Company; and **Does 1-10**, inclusive;

Defendants.

CASE NO. 8:25−cv−00760−FWS−ADS
[Assigned to Hon. Fred W. Slaughter]

**THIRD AMENDED CLASS ACTION COMPLAINT FOR:**

1) **Failure to Pay Minimum Wages;**
2) **Failure to Pay Overtime Wages;**
3) **Failure to Provide Meal Periods;**
4) **Failure to Provide Rest Periods;**
5) **Failure to Provide and Maintain Complete and Accurate Wage Statements;**
6) **Failure to Provide Wages When Due;**
7) **Failure to Reimburse Necessary Business Expenses;**
8) **Illegal Noncompete Agreements;**
9) **PAGA Penalties; and**
10) **Violation of California Business & Professions Code §§ 17200, et seq.**

**Jury Trial Requested**

Plaintiffs hereby bring this action on behalf of themselves and all other similarly situated current and former employees, by and through their counsel of record, allege as follows:

## PARTIES

1. At all relevant times for this Complaint, Plaintiff **Isaac Davidson-Gesser**, ("Mr. Davidson-Gesser") is and has been a resident of Port Hueneme, California. Mr. Davidson-Gesser was employed as an hourly, non-exempt employee of Defendants from on or around May 20, 2024 to on or around June 28, 2024. Mr. Davidson-Gesser was subject to the policies and practices described in this complaint at all times during his employment at Defendants.

2. At all relevant times for this Complaint, Plaintiff **Ciara Richards**, ("Ms. Richards" or collectively with Mr. Davidson-Gesser as "Plaintiffs") is and has been a resident of California. Ms. Richards was employed as an hourly, non-exempt employee of Defendants from on or around February 4, 2025 to February 27, 2025. Ms. Richards was subject to the policies and practices described in this complaint at all relevant times during her employment at Defendants.

3. Defendant **Aequor Technologies, LLC** ("Aequor Technologies") is a New Jersey limited liability company and, along with Aequor Healthcare, operates as part of an interrelated group of entities that jointly own and manage a staffing company providing workforce solutions across various industries throughout California.

4. Defendant **Aequor Healthcare Services, LLC** ("Aequor Healthcare" or collectively with Aequor Technologies as "Defendants") is a New Jersey limited liability company and operates, along with Aequor Technologies, as part of an interrelated group of entities that jointly own and manage a staffing company providing workforce solutions across various industries throughout California.

5. Plaintiffs are not currently aware of the names and true identities of defendants Does 1-10. Plaintiffs reserve the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. All further references in this complaint to any of the named Defendants includes the fictitiously named defendants.

6. At all times alleged herein, Plaintiffs allege that, upon information and belief, each Defendant was an agent, servant, joint employer, employee, partner, and/or joint venture of every other Defendant and was acting within the scope of the Defendants' relationship. Moreover, the conduct of every Defendant was ratified by each other Defendant. Further, upon information and belief, Aequor Technologies and Aequor Healthcare Services function as co-employers of Plaintiffs and/or as a single, integrated enterprise.

7. "Two or more ostensibly separate businesses may be treated as a single employer or integrated enterprise if they have (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control." *Antoine v. BAE Sys., Inc*., 2018 WL 11471623, at *11 (N.D. Cal. July 30, 2018) (*citing Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 815 (9th Cir. 2002)). Defendants meet this test.

8. Based on publicly available data from the California Secretary of State, both entities have stated under penalty of perjury that they have a Principal Office address of 377 Hoes Lane, Suite 300, Piscataway, New Jersey 08854—meaning that they share a common headquarters and principal office. Both companies also state on the same Statement of Information Form, again under penalty of perjury, that they also share a common Chief Executive Officer, Mr. Manmeet Virdi, whose address—*i.e.*, where he performs his work in running these entities—is 377 Hoes Lane, Suite 300, Piscataway, New Jersey 08854.

9. Upon information and belief, and based on Defendants' own representations in the notice of removal filed in this Action, Defendants' overlapping executive leadership jointly directs company operations from the 377 Hoes Lane, Suite 300, Piscataway, New Jersey 08854 location. As seen in the Notice of Removal, Dkt. No. 1, both entities have submitted substantively identical sworn declarations[1] stating that each Defendants' identical headquarters of 377 Hoes Lane, Suite 300 is "where its high-level officers direct, control, and coordinate the company's activities[,]" where each "Defendant's executives have offices in, and regularly work from[,]" where "the majority of executive and administrative functions take place[,]" including "the activities of all of

[1] *Compare* Gillen Decl. ¶ 4, ECF No. 1-2, with Carvin Decl. ¶ 4, ECF No. 1-3.

its high-level management team, and the majority of its administrative functions, including payroll, accounting, purchasing, marketing, legal, human resources, and information systems[,]" where "company-wide policies and procedures are formulated[,]" and where "Defendant's activities and operations are directed and ultimately controlled[.]"[2]

10. Moreover, Defendants operate from a single corporate domain (@aequor.com), including for their human resources communications with Plaintiffs, further evidencing centralized control of labor relations. For example, during Mr. Davidson-Gesser's employment, he regularly communicated with Human Resources Manager Megan Fobear, who used the email address hr@aequor.com. According to Ms. Forbear's LinkedIn profile, she has been employed by "Aequor" for more than 9 years, which exceeds the lifespan of the entity Aequor Technologies, LLC, which was not organized until May 13, 2025.[3] Other Aequor employees and officers, such as Ms. Lisa Carvin, who is Aequor Technologies' Director of Human Resources, hold herself out as working for "Aequor," rather than specific Aequor entities when corresponding with employees in written communications and documents.

11. The same is true with Ms. Richards. Throughout her employment, Ms. Richards routinely communicated with Recruitment Manager Chris Dusik, Senior Recruiting Manager Jeni Warndorf, and Compliance Officer Aarti Thanki—each of whom represented themselves as working for "Aequor," rather than identifying any specific Aequor entity as their employer. Furthermore, all of these individuals used the @aequor.com email domain when corresponding with Ms. Richards.

12. Additionally, other employees further demonstrate Defendants' centralized labor operations. For instance, Srini Nageswaran, assigned tasks to Mr. Davidson-Gesser, holds herself out on LinkedIn as the "VP Business & Technology Solutions" of "Aequor" from March 2015 to the present, while *simultaneously* identifying herself as the "Director – IT Business Solutions" of Aequor Technologies, Inc. since 2010.

---

[2] *Id.*

[3] Aequor Technologies LLC appears to be a successor entity to Aequor Technologies, Inc., which had its California registration forfeited in 2017 by the California Franchise Tax Board.

13. Additionally, both entities operate a single website from which they solicit customers and potential employees under the "Aequor Family of Companies" banner. On this website, Aequor represents that it is jointly owned by Manmeet and Kamal Virdi—evidencing common ownership or financial control.

**VENUE AND JURISDICTION**

14. This action was initially filed in the Orange County Superior Court of the State of California. The Superior Court had jurisdiction over all causes of action in this complaint pursuant to Article VI, § 10 of the California Constitution. No federal question was at issue; Plaintiffs relied solely on California statutes and law, including the Government Code and the Business & Professions Code.

15. Defendants removed this action from the Superior Court under CAFA. Plaintiffs do not concede that removal is proper. Venue is proper in this District because at least one Plaintiff resides in this District.

**CLASS ACTION ALLEGATIONS**

16. At all relevant to this Complaint, Defendants employed Plaintiffs or Class Members to provide staffing support to the companies they are placed in. However, Plaintiffs or Class Members were not paid for all hours worked, including 1.5–times their hourly rate for their work performed over 8 hours in a day, and/or 40 hours in a week. By way of example, Ms. Richards was required to perform on-the-job training program in order to begin working for Defendants, but was not compensated for her hours spent undergoing this training. Defendants were aware of these violations as they willfully failed to pay Plaintiffs or Class Members.

17. As a matter of uniform and systemic policy, Defendants failed to authorize and/or permit non-exempt employees to take bona fide meal and rest breaks pursuant to Labor Code § 226.7.

18. Upon information and belief, Defendants have consistently denied Class Members the opportunity to take compliant 30-minute meal periods in accordance with California's Labor Code. For instance, Mr. Davidson-Gesser was required to interrupt his meal periods to perform work duties, attend mandatory lunch meetings, respond to phone calls, cut short his breaks, or

otherwise remain on duty or under Defendants' control due to Defendants' policies and practices. Similarly, upon information and belief, Class Members, under similar circumstances as Mr. Davidson-Gesser, were also required to interrupt their meal periods to continue their work duties, answer phone calls, otherwise interrupt or cut short their meal periods, take their meals late, or remain on duty and under Defendants' control during their meal periods to perform other tasks at Defendants' directions.

19. Additionally, Defendants failed to accurately track Mr. Davidson-Gesser's meal periods and instead required him to record or input a time indicating that he took his meal period, even when he did not actually receive a compliant meal period. Some of this work was not recorded as time worked and went uncompensated because, as described above, Defendants prohibited or discouraged employees, such as Mr. Davidson-Gesser, from clocking back in on their putative meal periods and recording such time—resulting in a systemic failure to pay employees for all time worked. This resulted in employees being denied straight time and overtime pay, where applicable, for the time during which they were on call or under Defendants' control despite being off the clock for timekeeping purposes.

20. In failing to authorize and/or permit meal and rest periods, Defendants have also implemented a uniform policy of denying compensation in lieu of meal and rest periods to its non-exempt employees, including Mr. Davidson-Gesser and other Class Members similarly situated, were uniformly denied compliant meal and rest periods.

21. As a matter of uniform and systemic policy, Defendants required non-exempt employees to utilize their personal cell phones for work-related purposes, including making outbound calls, answering texts and calls from their supervisors while at work or on a break, being assigned tasks, and general administrative matters. Defendants further failed to compensate their non-exempt employees for reasonable costs associated with utilizing their personal cell phones for work-related purposes. Additionally, Defendants required other non-exempt employees, such as Ms. Richards, to purchase necessary business expenditures for work-related purposes, such as livescan fingerprinting, without receiving reimbursements.

22. As a matter of uniform and systemic policy, Defendants failed to provide its non-

exempt employees with accurate itemized wage statements in accordance with California's Labor Code. Upon information and believe, Defendants failed to furnish Plaintiffs, or Class Members, either semimonthly or at the time of each payment of wages, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing pick pay, gross wages earned, all deductions, and the net wages earned by Class Members for the inclusive dates for which the they worked.

23. Plaintiffs therefore bring this action on behalf of themselves and as a class action on behalf of the following defined Class:

**Non-Exempt Employee Class:**

*All persons who worked at least one shift as a non-exempt employee in the State of California from the period four years prior to the filing of the Action and the date of trial ("Class").*

24. Common methods of proof exist for determining these issues on a class-wide basis, including but not limited to, Defendants' employment records, payroll records, timesheets, policies, and disciplinary records.

25. **Numerosity.** Plaintiffs are informed and believes that, during the class period, at least 100 Class Members have been employed as non-exempt employees by Defendants within the state of California. The number of Class Members is sufficiently numerous such that joinder of all members is impossible or impracticable.

26. **Typicality.** Plaintiffs' claims are typical of all Class Members because they arise from the same policies, practices, and course of conduct by Defendants and are based on the same legal theories. Plaintiffs, like all other Class Members, was subjected Defendants' centralized policies regarding timekeeping, break periods, off-the-clock work, and expense reimbursement. Plaintiffs' experiences mirror those of other Class Members as they was subject to the same time keeping systems, policies, and directives from Defendants. Plaintiffs' job duties were typical of Class Members in all relevant respects.

27. **Adequacy.** There are no material conflicts between the claims of the representative Plaintiffs and Class Members that would make class certification inappropriate. Plaintiffs

understand their obligation to inform the Court of any relationship, conflicts, or differences with any Class Member. Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs are invested in redressing Defendants' illegal practices on behalf of all Class Members. Moreover, Plaintiffs have retained competent counsel experienced in both class action and employment litigation. Plaintiffs' attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement, and will vigorously assert the claims of all Class Members. Plaintiffs have incurred, and will continue to incur, costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

28. **Existence and Predominance of Common Issues.** Common questions of law and fact exist as to all Class Members and predominate over issues affecting individual Class Members, including, but not limited to:

a. Whether Defendants had a common policy and/or practice of depriving Plaintiffs and Class Members of required minimum wages;

b. Whether Defendants unlawfully and/or willfully failed to compensate Plaintiffs and Class Members required minimum wages;

c. Whether Defendants had a common policy and/or practice of depriving Plaintiffs and Class Members of required overtime wages;

d. Whether Defendants unlawfully and/or willfully failed to compensate Plaintiffs and Class Members required overtime wages;

e. Whether Defendants had a common policy and/or practice of depriving Plaintiffs and Class Members of compliant, off-duty meal and/or rest periods;

f. Whether Defendants unlawfully and/or willfully deprived Plaintiffs and Class Members of compliant, off-duty meal and/or rest periods;

g. Whether Defendants have a common policy and/or practice of failing to maintain accurate payroll records in the State of California;

h. Whether Defendants unlawfully and/or willfully failed to maintain accurate payroll records in the State of California;

i. Whether Defendants have a common policy and/or practice of failing to provide accurate wage statements reflecting hours worked and wages earned to Plaintiffs and Class Members;

j. Whether Defendants unlawfully and/or willfully failed to provide accurate wage statements reflecting hours worked and wages earned to Plaintiffs and Class Members;

k. Whether Defendants have a common policy and/or practice of failing to reimburse Plaintiffs and Class Members for reasonable business expenses;

l. Whether Defendants unlawfully and/or willfully failed to reimburse Plaintiffs and Class Members for reasonable business expenses;

m. Whether Defendants has a policy and/or practice of failing to pay Plaintiffs and Class Members final wages owed upon termination;

n. Whether Defendants unlawfully and/or willfully failed to promptly pay compensation due to Plaintiffs and Class Members upon termination of employment in violation of Labor Code §§ 201, 202, and 203;

o. Whether Plaintiffs and Class Members sustained damages as a result of any of the aforementioned violations, and, if so, the proper measure of those damages, including interest, penalties, costs, attorneys' fees, and equitable relief;

p. Whether Defendants are joint employers or a common enterprise; and

q. Whether Defendants violated the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., by violating the above provisions of law.

29. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class Members, while substantial, are small compared to the burden and expense of individual prosecution of the complex and expensive litigation necessary to address Defendants' conduct. Even if Class Members themselves could afford individual litigation, the court system would be overwhelmed by individual lawsuits if all Class Members sought redress. In addition, individualized litigation

increases the delay and expense to all parties and to the court system resulting from the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; it allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and it provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Plaintiffs contemplate providing individual notice to members of the class defined above as identified through Defendants' records.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

***California Labor Code §§ 1182.12, 1194, 1194.2, 1197, 1197.1, and 1198***

***Failure to Pay Minimum Wages for All Hours Worked***

**(Plaintiffs and Class Against Defendants)**

30. Plaintiffs repeat and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

31. California law requires employers to compensate employees for all time that an employee is "suffered or permitted to work," which includes all time "when any employer 'directs, commands or restrains' an employee." *See, e.g.*, *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 583 (2000), as modified (May 10, 2000); *see also* Code Regs. tit. 8, § 11070 ("'Hours worked' means the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, whether or not required to do so.").

32. Defendants failed to compensate Plaintiffs and the Class for all hours worked because Defendants had a policy and/or practice whereby they required and/or pressured Class Members to work under Defendants' control while off-the-clock, including but not limited to forcing or requiring Class Members to work while they were clocked out for their meal periods, and forcing or requiring Class Members to fulfill training sessions without compensation.

33. Defendants further failed to pay Plaintiffs and Class Members any wages for time engaged in this off-the-clock work.

34. Upon information and belief, Class Members were required to work off the clock in other ways or deprived of straight time wages by other means not currently known to Plaintiffs.

35. As a result of Defendants' failure and refusal to comply with California law, Plaintiffs and Class Members are entitled to recover actual and liquidated damages for the unpaid time, plus injunctive relief and reasonable attorney's fees and costs. Lab. Code §§ 1194, 1197.1.

**SECOND CAUSE OF ACTION**

***California Labor Code §§ 510 and 1198***

***Unpaid Overtime***

**(Mr. Davidson-Gesser and Class Against Defendants)**

36. Mr. Davidson-Gesser incorporates by reference every allegation in this complaint as if fully set forth herein.

37. California Labor Code §§ 510 and 1198 provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

38. Mr. Davidson-Gesser and Class Members who work more than eight hours in a day or more than forty hours in a workweek are to be paid at the rate of time and one-half (1½) for all hours worked in excess of eight hours in a day or more than forty hours in a workweek. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including commissions, non-discretionary bonuses and incentive pay. *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542, 573 (2018), as modified (Apr. 25, 2018).

39. Throughout the Class Period, Mr. Davidson-Gesser and other Class Members were not paid overtime premiums for all of the hours they worked in excess of eight hours in a day, in excess of twelve hours in a day, in excess of eight hours on the seventh consecutive day of work in a workweek, and in excess of forty hours in a week.

40. This occurred, for example, when Mr. Davidson-Gesser and other Class Members recorded shifts of 8 hours per day or 40 hours per week on the clock but due to their off the clock work described above should have been paid some portion of this time at qualifying overtime rates.

Upon information and belief, Class Members were required to work off the clock in other ways or deprived of overtime wages by other means not currently known to Mr. Davidson-Gesser.

41. Defendants knew or should have known that Mr. Davidson-Gesser and Class Members did not receive overtime compensation. Because Mr. Davidson-Gesser and Class Members sometimes worked shifts of more than eight hours a day or forty hours a week, they should have been adequately compensated at their appropriate overtime rate of pay. Accordingly, Defendants' failure to pay overtime compensation resulted in Mr. Davidson-Gesser and Class Members being deprived of earned overtime wages.

42. Pursuant to Labor Code § 1194, Mr. Davidson-Gesser and Class Members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

## THIRD CAUSE OF ACTION

***California Labor Code §§ 226.7, 512(a), and 1198***

***Meal Period Violations***

**(Mr. Davidson-Gesser and Class Against Defendants)**

43. Mr. Davidson-Gesser incorporates by reference every allegation in this complaint as if fully set forth herein.

44. At all times relevant to this complaint, Defendants knew they were obligated to provide legally-compliant meal breaks to its non-exempt employees pursuant to Labor Code §§ 512 and 226.7. Labor Code § 512(a) states in pertinent part: "[A]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

45. Labor Code section 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC. "An off-duty meal period, therefore, is one in which the employee is relieved of all duty during the 30-minute meal period . . . an employer's obligation is to provide an off-duty meal period: an

uninterrupted 30–minute period during which the employee is relieved of all duty." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1035 (2012).

46. Defendants' policies and practices served to deprive the Class of a full 30-minute break period free of employer control or relieved of all duties. Upon information and belief, employees were required to skip breaks, take breaks after the fifth hour of work, or work through them.

47. Accordingly, Mr. Davidson-Gesser and Class Members were uniformly denied meal periods as a result of Defendants' formal policies and practices. By failing to consistently provide uninterrupted, off-duty 30-minute meal periods, Defendants violated the Labor Code as to Plaintiff and Class Members.

48. In failing to authorize and/or permit meal periods, Defendants have also implemented a uniform policy of denying compensation in lieu of meal periods to its non-exempt employees, notwithstanding its actual knowledge that such employees were uniformly denied compliant meal periods.

49. Pursuant to Labor Code § 226.7(b), Mr. Davidson-Gesser and Class Members are entitled to recover from Defendants an additional hour of pay at their regular rates of pay for each shift in which a required meal period was not provided.

## **FOURTH CAUSE OF ACTION**

***Labor Code §§ 226.7 and 1198***

***Failure to Provide Rest Periods or Premium Pay in Lieu Thereof***

**(Mr. Davidson-Gesser and Class Against Defendants)**

50. Mr. Davidson-Gesser incorporates by reference every allegation in this complaint as if fully set forth herein.

51. At all times relevant to this complaint, Defendants knew they were obligated to provide compliant rest breaks to its non-exempt employees pursuant to Labor Code § 226.7.

52. Labor Code § 226.7 provides:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If any employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

53. Labor Code § 226.7, 512(a), and 1198 provide that no employer shall require an employee to work during any rest or meal period mandated by an applicable order of the IWC, including Wage Order No. 1. Employers must authorize and permit employees to be relieved of all duty during their rest and meal periods: "A rest period, in short, must be a period of rest." *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 834 (2016).

54. Employees must also be free to leave the employer's premises during their rest period. *See id.* at 270 ("In the context of a 10-minute break that employers must provide during the work period, a broad and intrusive degree of control exists when an employer requires employees to remain on call and respond during breaks. An employee on call cannot take a brief walk—five minutes out, five minutes back—if at the farthest extent of the walk he or she is not in a position to respond. Employees similarly cannot use their 10 minutes to take care of other personal matters that require truly uninterrupted time."); *see also* Department of Industrial Relations, "Rest Periods," *available at https://www.dir.ca.gov/dlse/FAQ_RestPeriods.htm* ("Q. Can my employer require that I stay on the work premises during my rest period? A. No, your employer cannot impose any restraints not inherent in the rest period requirement itself.").

55. Upon information and belief, as described above, Defendants failed to authorize or permit all required compliant paid rest periods for shifts between 3.5 and ten hours, or subjected employees to interrupted or shortened rest periods. Defendants further failed to authorize or permit a compliant third rest period for shifts in excess of 10 hours. Defendants further failed to schedule "rest periods … in the middle of each work period" by requiring Class Members to combine their rest periods with their meal periods despite feasibleness of providing rest periods in the middle of each work period. *See Rodriguez v. E.M.E., Inc.*, 246 Cal. App. 4th 1027, 1040 (2016) ("[W]e conclude that a departure from the preferred schedule is permissible only when the departure (1) will not unduly affect employee welfare and (2) is tailored to alleviate a material burden that would

be imposed on the employer by implementing the preferred schedule.").

56. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff and Class Members have sustained damages, including lost compensation resulting from missed or non-compliant rest periods, in an amount to be established at trial.

57. In failing to authorize and/or permit rest periods, Defendants have also implemented a uniform policy of denying compensation in lieu of rest periods to its non-exempt employees, notwithstanding its actual knowledge that such employees were uniformly denied compliant rest periods.

58. Pursuant to Wage Order No. 4 and Labor Code § 226.7(b), Mr. Davidson-Gesser and Class Members are entitled to recover from Defendants an additional hour of pay at their regular rates of pay for each shift that a compliant rest period was not provided. Defendants were aware that their actions were a violation of applicable law but consistently refused to pay premium pay as required by law.

## **<u>FIFTH CAUSE OF ACTION</u>**

***Labor Code §§ 226. 226.3, and 1174***

***Failure to Provide Complete and Accurate Wage Statements***

**(Plaintiffs and Class Against Defendants)**

59. Plaintiffs repeat and incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

60. Labor Code § 226 requires employers to furnish employees with an accurate, itemized statement in writing showing, among other things, (1) gross wages earned; (2) total hours worked by the employee (for hourly-paid, non-exempt employees); (3) all deductions; (4) net wages earned; (5) the inclusive dates of the period for which the employee is paid; (6) the name of the employee and the last four digits of his or his social security number; (7) the name and address of the legal entity that is the employer; and (8) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

61. At all times relevant to this complaint, Defendants' failure to pay premium wages for missed meal and/or rest periods further ensured that Class Members' wage statements

inaccurately reflected gross and net wages earned. Defendants' failure to compensate all hours worked and/or pay all required overtime rates further left the wage statements they provided to employees to be inaccurate.

62. Defendants have also failed to keep accurate payroll records for Plaintiffs and Class Members in accordance with Labor Code § 1174. Defendants' failure to keep and maintain accurate payroll records reflecting hours worked and wages earned has impeded Plaintiff sand Class Members' ability to calculate unpaid wages earned.

63. Injury. Defendants knowingly and intentionally failed to comply with Labor Code § 226, causing injury and damages to Plaintiffs and Class Members. Plaintiffs and all those similarly situated were injured by these failures because, among other things, they were confused about whether they were paid properly and/or they were misinformed about how much compensation was owed. These damages include, but are not limited to, costs incurred calculating the correct net wages for each pay period and the amount of employment taxes that were not paid to state and federal tax authorities.

64. Relief. Labor Code § 226(e)(1) provides that an employee suffering injury as a result of not being provided with an accurate itemized wage statement is entitled to recover the greater of all actual damages suffered or fifty ($50) dollars for the initial violation and one hundred ($100) dollars for each subsequent violation, up to $4,000. Pursuant to Labor Code §§ 226(e) and (g), Plaintiff and all others similarly situated are entitled to injunctive relief to ensure Defendant's compliance with Labor Code § 226, as well as attorney's fees and costs of suit.

## SIXTH CAUSE OF ACTION

***Labor Code §§ 201, 202, 203, and 204***

***Failure to Pay Wages When Due***

**(Plaintiffs and Class Against Defendants)**

65. Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

66. Labor Code § 201 provides, in relevant part, that:

> If an employee not having a written contract for a definite period quits his or his employment, his or her wages[4] shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of quitting.

67. Defendants do not include definite periods of service in their contracts of employment for Class Members employed at their California facility. Plaintiffs' contract of employment did not include a definite term.

68. Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with § 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

69. Labor Code § 204 provides that all wages, other than those mentioned in Section 201 and 202, are due and payable twice during each calendar month, on days designated in advance by the employer as regular paydays.

70. Failure to Timely Pay Wages Due. As set forth above, Defendants failed to timely pay the overtime wages and meal and rest period premiums resulting from its deficient timekeeping and meal and rest period policies.

71. Failure to Pay Upon Termination. Plaintiffs and many Class Members have left Defendants' employ during the Class Period. As discussed above, Defendants knowingly failed to pay Plaintiffs and Class Members all earned wages upon termination. Instead, Defendants willfully

---

[4] Labor Code § 200 defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." "Labor" is defined as "labor, work, or service . . . if the labor to be paid for is performed personally by the person demanding payment."

and intentionally refused to pay the earned rest and/or meal period premiums and earned minimum wages as alleged herein to Plaintiffs and Class Members in violation of Labor Code §§ 201 and 202.

72. Relief. Defendants' failure to pay Plaintiffs and those Class Members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employment, violates Labor Code §§ 201 and 202. Plaintiffs and formerly employed Class Members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a 30-day maximum penalty under Labor Code § 203.

## SEVENTH CAUSE OF ACTION

### *California Labor Code § 2802*

### *Failure to Reimburse Necessary Business Expenses*

### (Plaintiffs and Class Against Defendants)

73. Plaintiffs repeat, replead, and incorporate by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

74. Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Lab. Code § 2802. The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).

75. Defendants required non-exempt employees to utilize their personal cell phones for work-related purposes, making outbound calls, including answering texts and calls from their supervisors while at work or on a break, being assigned tasks, and general administrative matters. Defendants further failed to compensate their non-exempt employees for reasonable costs associated with utilizing their personal cell phones for work-related purposes. Defendants also required non-exempt employees to purchase other necessary business expenses, including livescans, failed to reimburse those necessary business expenditures.

76. Defendants failed to reimburse a reasonable portion of the Class Members' cellphone related expenses despite requiring the use of the device and/or applications that required a data plan. *See Cochran v. Schwan's Home Serv., Inc*., 228 Cal. App. 4th 1137, 1144 ("We hold that when employees must use their personal cell phones for work related calls, Labor Code section 2802 requires the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills."). Defendant further failed to reimburse Plaintiffs and the Class Members for the purchase of work-related equipment.

77. By unlawfully failing to pay Plaintiffs and Class Members, Defendants are liable for a reasonable portion of the incurred expenses, to be determined upon trial, plus reasonable attorneys' fees and costs. Lab. Code § 2802.

## EIGHTH CAUSE OF ACTION

***Cal. Bus. & Prof. Code §§16600, 16600.1, 16600.5***

***and Labor Code Section 432.5***

**Illegal Noncompete Agreements**

**(Mr. Davidson-Gesser and Class Against Defendants)**

78. Mr. Davidson-Gesser incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

79. "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

80. As of January 1, 2024, under Section 16600.1, it is illegal for an employer "to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement" Cal. Bus. & Prof. Code § 16600.1.

81. Further, employers are required under Section 16600.1 to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022, whose contracts include a barred non-compete clause or agreement.

82. All noncompete clauses or agreements covered under Section 16600-16600.5 are

void and an impacted "employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." Cal. Bus. & Prof. Code § 16600.5. A prevailing employee is also entitled to recover reasonable attorney's fees and costs. *Id*.

83. Separately, under Labor Code § 432.5, "[n]o employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law." Cal. Lab. Code § 432.5.

84. Defendants required their employees to enter into employment contracts and/or required as a condition of employment that employees refrain, during their employment or for a period of eighteen months after their separation, from soliciting, enticing, or persuading any customer or client of Defendants to cease doing business with them.

85. Defendants also required their employees to enter into employment contracts and/or required as a condition of employment that employees agree to refrain, during their employment or for a period of eighteen months after their separation, from soliciting, enticing, or persuading any employee or contractor of Defendants to leave their employment or engagement with Defendants.

86. Defendants also required their employees to enter into employment contracts and/or required as a condition of employment that employees agree to refrain, during their employment or for a period of one year after their separation, from engaging in services of selling product "competitive with the Business" of Defendants, or own or control an entity that does so.

87. These requirements violate Cal. Bus. & Prof. Code § 16600 and are not covered by any exemption to that chapter.

88. Defendants also failed to provide a curative notice "in the form of a written individualized communication" to employees employed after January 1, 2022 in which the notified employees that these requirements were void.

89. Defendants' actions violated Cal. Bus. & Prof. Code § 16600, 16600.1, and 16600.5. Class Members are entitled to injunctive relief and actual damages, and legal fees to remedy these

violations.

## NINTH CAUSE OF ACTION

***Labor Code §§ 558, 2698, et seq.***

***Private Attorneys General Act ("PAGA") Penalties***

**(Plaintiffs and Aggrieved Employees Against Defendants)**

90. Plaintiffs repeat and incorporate by reference every allegation in this complaint as if fully set forth herein.

91. Standing. Under the California Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*, an aggrieved employee may bring a representative action as a private attorney general, on behalf of themselves and other current or former employees to recover penalties for an employer's violations of the Labor Code and IWC Wage Orders.

92. Plaintiffs, by nature of their employment with Defendants, are aggrieved employees for purposes of this Complaint with standing to bring an action under PAGA.

93. Plaintiffs, on behalf of the State of California and all Aggrieved Employees, brings this representative action pursuant to Labor Code § 2699, *et seq.*, seeking civil penalties for Defendants' violation of the Labor Code provisions mentioned in this Complaint, including but not limited to §§ 201, 202, 203, 204, 206.5 226, 226.3, 226.7, 432.5, 510, 512, 558, 1182.12, 1174, 1194, 1194.2, 1197, 1197.1, 1199, 1401, and 2802 as described herein, plus attorneys' fees and costs.

94. Entitlement to Penalties. Under the California Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*, an aggrieved employee may bring a representative action as a private attorney general, on behalf of themselves and other current or former employees, against whom a violation of the same provision(s) was committed, as well as the general public, to recover penalties for an employer's violations of the Labor Code and IWC Wage Orders within one year of filing a notice to the Labor and Workforce Development Agency in the amounts set forth in Labor Code § 2698.

95. These penalties are in addition to any other relief available under the Labor Code and are allocated sixty-five percent to the Labor and Workforce Development Agency and thirty-five

percent to the affected employees.

96. These penalties may be "stacked" separately for each of Defendants' violations of the Labor Code subject to the exceptions enumerated in Labor Code section 2698(i). *See, e.g.*, *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972, 2012 WL 2373372, at *17 n.77 (C.D. Cal. June 22, 2012); *see also O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2016 WL 3548370, at *7 (N.D. Cal. June 30, 2016); Labor Code § 2698(i).

97. Procedural Requirements Met. On March 4, 2025, Plaintiff electronically filed a notice of claims with the LWDA and sent a copy to Defendants by certified mail. On May 8, 2025, the sixty-five-day notice period expired as to all defendants. Plaintiffs did not receive notice from the LWDA that it would be investigating the complaint nor did Plaintiffs receive notice from the LWDA that it was declining to investigate with the 65-day period under Labor Code § 2699.3. Since the LWDA took no steps within the prescribed time to intervene, Plaintiffs have exhausted all required administrative remedies required to seek penalties under PAGA. *See* Lab. Code § 2699.3(a)(2). A true and correct copy of Plaintiffs' Amended PAGA Notice is attached herein as **Exhibit A**.

## TENTH CAUSE OF ACTION

***California Business & Professions Code §§ 17200, et seq.***

***Unlawful Business Practices***

**(Plaintiffs and Class Against Defendants)**

98. Plaintiffs repeat and incorporate by reference every allegation in this complaint as if fully set forth herein.

99. Defendant Aequor Technologies is a "person(s)" as defined by California Business & Professions Code § 17201, as they are a natural person, corporations, firms, partnerships, joint stock companies, and/or associations.

100. Defendant Aequor Healthcare is a "person(s)" as defined by California Business & Professions Code § 17201, as they are a natural person, corporations, firms, partnerships, joint stock companies, and/or associations.

101. Unlawful Business Practices. Defendants' knowing violations of the Labor Code

constitutes an unlawful business practice as set forth in Business & Professions Code § 17200, et seq. Defendants' failure to abide by the laws discussed herein provided Defendants an unfair advantage over their competitors at the expense of their workers. Instead, Defendants cuts corners in the name of higher profits and at the expense of employee well-being. Defendants' actions thereby constitute an unfair, fraudulent, and/or unlawful business practice under Business & Professions Code § 17200, et seq.

102. Relief. Plaintiffs bring this cause of action seeking equitable and injunctive relief to stop Defendants' willful and ongoing misconduct, and to seek restitution of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices described herein. In addition, Plaintiffs seek an award of costs and attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure § 631, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

A. For an Order:

a. Certifying the Class;

b. Appointing Plaintiffs as representative of the Class;

c. Appointing Plaintiffs' counsel as Class Counsel;

B. For actual and liquidated damages according to proof at trial;

C. For statutory and civil penalties and special damages, according to proof at trial;

D. For pre- and post-judgment interest on monetary damages;

E. For preliminary and permanent injunctive relief;

F. For reasonable attorneys' fees and costs and expert fees and costs as allowed by law; and

G. For such other relief as this Court deems just and proper.

Dated: January 6, 2026

Respectfully submitted,

**KING & SIEGEL LLP**

By: */s/ Elliot J. Siegel*
Elliot J. Siegel, Esq.
Attorneys for Plaintiffs

Dated: January 6, 2026

**BARAHMAND LAW GROUP**

By: */s/ Navid Barahmand*
Navid Barahmand, Esq.
Attorneys for Plaintiffs